The next matter on our calendar is Enri Lehman Brothers Holdings Inc. And we have three parties set to argue. I also have a motion from a tester capital dated this morning, asking to be, asking to substitute a tester limited for a tester capital. Do either of the other parties disagree or object? This is Greg Silbert for Lehman, Your Honor. I'm not aware of any basis to object. Would it be okay if we just confirm internally that those were in fact the tester entities? Sure, I'm not going to, I'm not gonna grant the motion until both of you tell me that there's no objection. Okay, we'll send you a letter one way or the other. I don't know of any reason why we would object. That's fine. All right, let's- If I may, Your Honor, Joshua Dorchak, counsel for Deutsche Bank. We don't object to the motion. Okay, that's fine. All right, but I'll wait to hear from Lehman. Is that you? Who are you? I'm Lehman. I'm Greg Silbert for Lehman. We're colleagues, Your Honor. So I think first it's Mr. Dorchak for- Right. Okay. Mr. Dorchak, proceed. May it please the court. Joshua Dorchak of Morgan Lewis and Bakke SLLP on behalf of Appellant Deutsche Bank and also by agreement speaking on behalf of Appellant Attestor. Good morning. The initial issue on this appeal is the standard of review, whether this court must defer to the bankruptcy court's interpretation of Lehman's Chapter 11 plan, as opposed to a de novo review. We didn't actually expect this to be an issue when we filed our opening brief, but the appellee has pushed back on this hard, essentially accusing the court of getting lost, going astray on this issue about halfway through the preceding century and over the last 30 years or so, just simply getting the issue wrong. Well, naturally we think you got it right. The appellee's cases about railroad cases from the late 40s and 50s, I'm not even, they predate the current structure of the bankruptcy courts and they also are cases in which the court believed the plain meaning or the clear language of the plan was enough and didn't need to ask, so to speak, the bankruptcy judge, or actually the district court judge about his or her opinion of the thing. I mean, what it comes down to is when a contract governed by New York law is unambiguous, there's no need to ask anybody what it means. It's a matter of law, it means. And bankruptcy plans governed by New York law, as long as we're talking about an unambiguous one, are subject to Daniel review like any other contract of that sort. In Ray Calico, which Judge Hall may remember, cited in Ray Duplan, which was a bankruptcy ad case. This has been true for a long time and there's no reason that bankruptcy plans should be the only exception to that rule. Now this court could theoretically find the Lehman plan to be ambiguous. And in that case, theoretically, some sort of deference would be appropriate, but actually not, not even then. Really, there's two reasons for that. First of all, if the plan's ambiguous, we need a record of the extrinsic evidence and we don't have that right now. And the bankruptcy court didn't purport to depend on any extrinsic evidence. So there's no decision that you could defer to, at least not today. And then if we did go back on remand and built up a record and got a decision and came back to you again, well, the underlying premise of this deference still wouldn't be applicable. One of your main arguments is that the word consideration should be read to mean bargained for consideration. That's right. Aren't you in essence, rewriting it? You're narrowing consideration to bargain for consideration. Oh, the argument that we've rewritten the plan because we're telling you what we think the words mean. I think that's a little unfair of an accusation. We're saying that the word consideration is being used in its legal sense, and what it means in its legal sense is value given in a bargain for exchange. When you have to explain the word by injecting other words, it seems to me you are at least arguably trying to rewrite the word, rewrite the contract that is by putting adjectives on the word. I see what you mean, but we're not trying to change what the plan says. We're trying to interpret what the word consideration means. We're saying it should be used in its more narrow legal sense. We're also trying to interpret what the word on means, but we have to talk, we have to explain what we think the word on means using other words. Now, the bankruptcy court and the appellees, they say that provided on the primary claim has a but for meaning, anything that's related in any way to the primary claim. Well, why aren't they rewriting the plan? It doesn't say related to, it doesn't say in connection with, it could have said those things. Those are undeniably broad. You think on means in satisfaction of? In this sentence, that's exactly right. That's what we think it means. In the same way, in the expression payment on a loan, you told someone you just made a payment on your loan, they understand that to mean, obviously not physically something on top of something else. It means you've made a payment that paid down your loan. It doesn't mean you've made a payment to someone, somewhere. I made a payment of interest. I made a payment of interest. Is that a payment on my loan? Well, in the case of bankruptcy claims, they have pre-petition interest baked into them and post-petition interest is separate. So it's a little strange, but I hear your question. Your question is, if I can pay interest on a loan, well, why isn't that a payment on the loan? And my answer is that this is, you gotta be careful. Interest on a loan, that's a standalone phrase. Anyone can talk about interest on a loan. You could pay interest on a loan. You could discuss interest on a loan. You could love interest on a loan. You can hate interest on a loan. Interest on a loan means interest accrued on a loan. So paying interest on a loan is paying interest that's accrued on a loan. You can't equate the word on in that phrase with the word on in a phrase like consideration provided on or payment on a loan. So I get it. What about in section 813C? It seems that interest is a form of distribution. Distribution is a type of consideration and therefore arguably interest is consideration. Right, interest post-petition interest, which is outside the scope of the claim that's filed. And that's true in the United Kingdom and it's true in the United States. And there's not a dispute about that actually, Your Honor. That post-petition interest they say is a distribution with a capital D under the plan. Go look at section 8.13C. And 8.13C says after everybody's received their payment in full for their claims, they can get a distribution with a capital D of post-petition interest. The trouble is section 8.13 of the plan says, in no event shall any creditor get a distribution with a capital D after they've been paid in full. So there's a problem there. After you're paid in full, you get a distribution of post-petition interest, except you can't get any distributions anymore. So we think that's actually a bad thing for them to pick to say, aha, we're right. It doesn't, there's a logical flaw in the plan. Distributions with a capital D logically actually can't work to describe post-petition interest after the claims have been paid in full. So, and really that's our main point. There's separate things. Your claim is one thing and whatever satisfies that claim, absolutely. You're saying that the post-petition interest is not other consideration provided on the corresponding primary claim. Right, Your Honor. That's your- Right, we're really making two arguments there. It's not consideration because it wasn't bargained for. We got it automatically from the statute. We didn't even, we didn't file a claim for that. We just got it automatically and under the statute. And that was always true. It was inevitable if the English entity was solvent. So it's not consideration because it wasn't bargained for which is an implicit part of the meaning of the word consideration when lawyers talk about consideration. And the other thing is provided on. That money was provided to us. I don't deny that. And the money was provided in relationship with our primary claim. I don't deny that either. I'm not making silly arguments. What I'm saying is that that money was provided to us but it didn't have the effect of reducing the claim that we actually filed. And so why does that matter? It matters because the claim that we actually filed is the claim that LBHI guaranteed. And a gratuitous windfall to us from some other source shouldn't get them off the hook. So it's an extreme example but I think everyone would agree if Deutsche Bank won the lottery while their claim was pending in England that wouldn't have the effect of letting Lehman off the hook just because we've got lots of money. Yeah, but the lottery isn't tied. This is getting a little bit far afield. The lottery isn't tied to the deal. Exactly, exactly, Judge Hall. That's the point. I'm saying- But getting the interest is tied to the deal. It's related to the claim. It's tied to. You don't give away money without interest. At least nobody I know looking at all the five of us at this table would do that unless it's our children. Remember, Your Honor, I take your point on a logical commercial level but this is a bankruptcy proceeding both here and in England. So there's no logic to it? Some people might say that but what I'm trying to say is more specific than that. You're not allowed to claim for post-petition interest. There's a cutoff on the day that the company goes into the bankruptcy. You can't ask for anything after that. It's not part of your claim. So you're saying everybody else- Just so I understand- You're not allowed to ask for interest. Just so I understand, you correct me if I'm wrong. Because you can't claim for it, it can't count. Because we can't claim for it and didn't claim for it, two things. Number one, it's not consideration. Number two, LBHI shouldn't get credit for it. We got these extra pounds sterling and they're saying- I threw you a softball, don't you? You know, it's baseball season. Nobody's watching. Don't you want to hit it out of the park? I'm just trying to give you the fullest answer I can. I'm trying not to make this a simple thing. I mean, it all comes down to the words in the plan. They don't mean what either. They don't obviously mean what either party says they mean. And we try to follow the canons of interpretation and avoid inconsistencies and redundancies. I'm sorry, you've reserved three minutes for rebuttal. Your time has expired. We will hear from Deutsche Bank. Thank you, Your Honor. Thank you, Your Honor. This is Greg Schilbert from Lehman, the atelier. Oh, you're not Deutsche Bank. I'm sorry. Lehman Brothers. We just heard from- No, that Mr. Dorchek was for Deutsche Bank. Right, this is your- We know that. LBH? Correct, LBHI, which is Lehman Brothers Holdings. My mistake, thank you. Not a problem, Your Honor. Greg Schilbert from Weill for Lehman. We actually do think this is a simple thing. I'm gonna start with consideration. The question whether these interest payments are consideration on the claim. And then I'll turn to whether they were provided on, whether the interest was paid on the claim. As to the first issue, consideration, the dispositive language in the plan is distributions or other consideration. That's what section 813A says is deemed to satisfy the guarantee claim, distributions or other consideration. And it's that connecting phrase, or other, that is dispositive because it tells us that the term at the end of the phrase, consideration, has to be broader than, and has to include the term at the beginning of the phrase, distributions. Distribution, you're saying distribution is a type of consideration. And then there are other considerations as well. Exactly right, Judge Chin. And so if you're a math person and you wanted to put it in mathematical terms, you could say distribution is a member of the set of consideration. We give you examples of why this has to be true. It wouldn't make sense to say apples or other vegetables. It wouldn't make sense to say Wednesday or other months. We know that distribution is included in consideration. And that's dispositive here because distribution is a defined term in the plan. It's defined in section 1.47, and it means any payment or transfer made under the plan. It's not limited to a particular kind of payment like a bargain for exchange. It's any payment. Now, to be a distribution, the payment has to be made under the plan, but we all agree that that limitation does not apply to consideration. Consideration does not have to be paid under the plan. And so what we're left with is consideration, which has to be broader than and include distributions can only mean any payment or transfer. And it cannot have the meaning that plaintiffs give it a bargain for exchange, because if it did, then distribution would not be a member of the set. Consideration would not be included in consideration. And you would run into this apples or other vegetables problem. Now, this is a problem that has been identified with plaintiff's interpretation repeatedly throughout this litigation, yet plaintiffs have never attempted to respond to it. Even as we stand here today, it was discussed. This records decision at page 25. It was discussed repeatedly in our brief. There's not a word about it in any of plaintiff's briefs to this court. And I did not hear an answer in my friend's opening argument either. So in our view, this is a dispositive point that unambiguously precludes plaintiff's interpretation, which they have never attempted to respond to. So also other dispositive language in the plan that excludes plaintiff's interpretation. And I'm thinking here of the provision that you asked about Judge Chin section 813 C. That's the provision that expressly provides for distributions of post-petition interest on a claim. And the only difference between those payments of post-petition interest and the ones that the plaintiff's got here are that the interest payments under section 813 C are made by debtors in the US bankruptcy case, whereas plaintiffs got their post-petition interest from a debtor in the English insolvency case, but otherwise they're the same. They're distributions of post-petition interest made by Lehman affiliates. That language tells us that interest is a vegetable or a month that's part of the set is what you're saying. Exactly right. Because it's even an independent argument, Judge Chin. I think that the distributions or other consideration combined with the definition of distributions in section 1.47, that's one reason that plaintiff's interpretation can't be right. Here's a different reason. 813 C talks about distributions of post-petition interest on the claim. And so just like those distributions under 813 C are distributions that count against a guarantee claim. So is the post-petition interest that plaintiff's got in the English insolvency case. Now plaintiff's only answer to this is the one that Mr. Dorchuk gave in his opening argument. He said that, well, that's a mistake. 813 C is a mistake. In their brief, they call it a drafting error and they urge you not to apply it as written. Well, first that's a pretty tall order. Courts don't usually go around rewriting the actual language of an agreement that the parties included unless there's absolutely no alternative. And it's certainly not necessary here because 813 C is not a mistake. Remember what plaintiffs are telling you is when 813 C talks about distributions of post-petition interest, it shouldn't have used the term capital D distributions. Well, capital D distributions is a defined term in the plan. It's defined in section 1.47, that's at JA 349. And it's defined to mean any payment or transfer under the plan. So here you have a provision of the plan, 813 C, expressly providing for payments of post-petition interest on a claim. Obviously, if those payments are made, they are payments made under the plan. And so obviously they are capital D distributions under the definition of distributions in the plan in section 1.47. So 813 C is not a mistake, it's correct. And that is an independent reason why plaintiff's interpretation has to be wrong because it's clear that the distributions of post-petition interest under 813 C count against a guarantee claim and the post-petition interest that plaintiff's got in the English insolvency case, which is exactly the same thing, just happens to be paid by an English debtor, also count against a guarantee claim. So that's consideration. Before I turn to provided on, let me ask if the panel has any questions on that point. Okay, we think provided on is also pretty straightforward. The question is just whether the interest is paid on the claim. And we know that the drafters of this plan understood that post-petition interest is paid on a claim because they said so expressly, again, in the provision that you mentioned, Judge Chen, section 813 C. It talks about distributions of post-petition interest, quote, on the allowed amount of the claim. So we know that the people who drafted the plan, who wrote in section 813 A, that distributions or other consideration provided on a claim is deemed to satisfy a guarantee, understood when they wrote on the same page of the plan in 813 A, that post-petition interest is a distribution made on a claim. And so obviously the- Yeah, I think, as I understand the argument, the argument is on the claim implies you're paying the claim whereas interest would be pay interest with respect to the claim or something. So arguably, if you intended to cover interest, you might say something slightly differently. That's what I understand the argument to be. That's what I understand the argument to be too, Judge Chen, and that- This is one of these cases where both sides say the language is unambiguous and both sides interpret it differently. Obviously, they both can't be unambiguous. Right, right about that, both of you. We think it's unambiguous in our favor, again, for a couple of reasons. On this provided on point, again, look at 813 C, okay? Because it talks about post-petition interest payments exactly like the ones plaintiffs got, only payments made in the US bankruptcy case. And nobody thinks that those post-petition interest payments are gonna be treated any differently than the ones that plaintiffs got just because plaintiffs happened to get theirs from an English debtor, an English Lehman affiliate. And so the question is, would those post-petition interest payments- Did anyone argue below that you should look at extrinsic evidence that maybe there is an ambiguity and what evidence is there of what the parties intended? We all view the language as unambiguous and so did both courts below. There was some discussion of extrinsic evidence, namely that of the hundreds of sophisticated parties who hold interests that are identical to these two plaintiffs worth billions of dollars, only these two plaintiffs have asserted this interpretation. But neither of the courts below wound up relying on that extrinsic evidence. We think 813 C, again, is dispositive on this provided on point because it expressly says that distributions of post-petition interest are gonna be made on a claim. If that's not enough, the plaintiffs themselves described the post-petition interest they received as interest on a claim. They say at page 12 of their brief that English law requires a solvent debtor to pay, quote, interest on admitted claims. But you wouldn't be making this, I mean, you'd be making the same argument if they had said interest with respect to the claim, right? I would, Your Honor, correct. But the fact that they put it that way, it just shows that a natural English speaker would easily understand that interest is paid on a claim, which is what was meant here. It's actually in 813 C twice, the interest on such claims. Right, it's clear that the drafters of this plan understood that interest would be paid on a claim. I see I have little time left. Let me just, the final point I would make is that we think both the purpose of the maximum distribution provision and also the single satisfaction rule are important here. The purpose of the maximum distribution provision is to limit the parent's exposure on these kinds of claims so that there's money left over to pay other creditors. And the single satisfaction rule is a fundamental principle of bankruptcy that says essentially nobody gets a second helping until everyone gets their first helping. Well, here you've got two parties who undisputedly have received well over the amount of their guarantee claim by a significant margin. And they are asking this court to award them hundreds of millions of dollars in addition. If you did that, it would only mean that there's hundreds of millions of dollars less available to pay other creditors who have not done nearly as well and are still waiting to get even 50 cents on the dollar on their claims. We don't think that's consistent with either the purpose of the maximum distribution provision or with a single satisfaction rule.  Thank you, your honor. Mr. Hitchcock, you've reserved three minutes for rebuttal. Thank you, your honor. That last point that Mr. Silbert made is I believe the reason why the bankruptcy court made this hasty decision. Just doesn't make, just doesn't ring true that someone who's already recovered all that much money comes and asks for more. But that's what the plan provides. We're asking for our pound sterling to be trued up to US dollars. We haven't received that satisfaction ever. We've gotten a bunch of British pounds, that's true. Part of them paid off our claim and part of them paid the statutory interest. There's still a gap. There's still a thing missing. All those extra pounds shouldn't be applied to fill the gap that Lehman promised to fill. But under the terms of function. Under the terms of the plan, you wouldn't be entitled to that if all allowed claims were paid in full, right? Well, we're not asking- Even assuming it's true, you've been shorted because of the currency difference. It doesn't matter if your allowed guarantee claim has been paid in full. I don't agree with that, your honor. The currency true up applies no matter whether we're paid in full or not. In London, the circumstance is such because pounds are worth less than the dollars that we got a full payment, so to speak, in pound sterling. But we still are entitled to the true up to turn it into a US dollar sized claim. And my whole argument is that the statutory interest didn't make our claim bigger. It's not part of our claim. But would the creditors here have a claim against you had the balance, had the valuation of the pound been greater than the dollar? If- And you'd gotten paid in pounds and overpaid? Well, yes, I absolutely agree with that. That's what happened with the Japanese yen example that Lehman put in their brief. If the currency had gone the other way, we would have been paid off sooner in England rather than lagging behind, so to speak. And that we wouldn't, no problem with that. The, I wanna, if I can just do a specific rebuttal, just two things. The plan was robustly negotiated. And the idea that the function of this maximum recovery section was to protect, solely to protect LBHI as guarantor from paying out the money whenever anyone could interpret it the plan that way, that doesn't make any sense. It's not commercially reasonable that parties come and they negotiate and the result is one guy always wins. But it goes to a specific point, which is distributions under the plan being consideration, the whole plan was negotiated. And so everything that happens under the plan is consideration in the sense of a quid pro quo. It, that's my, that's something I hadn't said before, which I think addresses this issue about distributions with a capital D. And the other thing, last point I wanna make, the appellee relies on section 8.13C. Hey, it says distributions include post-petition interest. I said there was a problem with that. Mr. Silber ducked the problem. The problem is section 8.13B, which says in no event shall an allowed claim receive distributions with a capital D after they've been paid in full, which is precisely when you get post-petition interest. Definitely there's an inconsistency in that plan. I'm not making it up. And appellants, we complained about this on page 15 of our reply brief. Appellants say, look, we're gonna interpret this. We're gonna make sense of the plan as a whole without any need for alteration. And then they quoted section 8.13B and they omitted the first three words, in no event. And then they added nine words at the end to fix the problem that they say doesn't exist. So I believe that we are not the ones who are straining. When we say there's a difficulty with this distributions with a capital D include post-petition interest, you're done, you lose. I don't think it's that simple. And we're just really, what I started with, asking this panel to take a fresh look top to bottom with the commercial reasonableness in the back of your mind. Thank you, counsel. Thank you. Very lively argument. We'll reserve decision.